ATKINSON & DeBARTOLO, P.C.
The Galleria
2 Bridge Avenue
Building Two, Third Floor
Red Bank, New Jersey 07701
(732) 530-5300
BA 9186
Attorneys for Trustee, Bunce D. Atkinson

| | |
|---|---|
| IN RE:<br><br>P. H. CONSTRUCTION, INC.,<br><br>        Debtor.<br>_____<br><br>BUNCE D. ATKINSON, TRUSTEE FOR DEBTOR ESTATE OF P.H. CONSTRUCTION, L.L.C.,<br><br>                Plaintiff,<br>vs.<br><br>HANS KRETSCHMAN, PAULETTE MASSARO, PH PROPERTIES, a fictitious company, PH DISTINCTIVE PROPERTIES, L.L.C., PHJ, L.L.C., PHJC, L.L.C. and PLEXICRAFT, INC.,<br><br>              Defendants. | UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY<br>CASE NO. 16-22139/MBK<br><br>ADV. NO.:<br><br><br><br>**COMPLAINT TO SET ASIDE FRADULENT TRANSFERS, RECOVER PREFERENCES, DAMAGES FORBREACH OF FIDUCIARY DUTY, AND OTHER RELIEF** |

Bunce D. Atkinson, Esq., Chapter 7 Trustee for the Debtor Estate of P.H. Construction, LLC by way of Complaint against the Defendants says:

### JURISDICTION AND VENUE

1. Jurisdiction in this matter exists by virtue of 28 *U.S.C.* §1334.

2. This matter is a core proceeding pursuant to 28 *U.S.C.* §157.

3.  Venue in this matter is properly before this Court by virtue of 28 *U.S.C.* §1408.

## PARTIES

4.     Bunce D. Atkinson is the duly appointed Trustee in bankruptcy for the Debtor Estate of P. H. Construction, Inc.

5.     The Defendant, Hans Kretschman (hereinafter "Kretschman") is a 99% member and managing member of P.H. Construction, L.L.C. (hereinafter "PH") which filed a petition for relief under chapter 7 of the United States Bankruptcy Code, and conducted business located at 302 Morris Avenue, Spring Lake, New Jersey 07762.  On information and belief, the Defendant has a residence at 6 Ocean Avenue, Ocean Grove, Neptune Township, New Jersey.

6.     The Defendant Paulette Massaro (hereinafter "P.Massaro") is a 1% member of PH, and the wife of the managing member, Hans Kretschman, with a residence at 6 Ocean Avenue, Ocean Grove, Neptune Township, New Jersey.

7.     The Defendant PH Properties, an unincorporated entity with a place of business at 302 Morris Avenue, Spring Lake, New Jersey operated as a fictitious company by Kretschman.

8.     The Defendant PH Distinctive Properties, L.L.C. (hereinafter "PH Distinctive") in which Kretschman and P.Massaro are each 50% members has a principal place of business at 8 Ocean Avenue, Ocean Grove, Neptune Township, New Jersey.

9.     The Defendant, PHJ, L.L.C. (hereinafter "PHJ") in which Kretschman and P.Massaro each are 50% members has a principal place of business at 8 Ocean Avenue, Ocean Grove, Neptune Township, New Jersey.

10.     The Defendant PHJC, L.L.C. (hereinafter "PHJC") is a limited liability company in which Kretschman and Massaro each are 50% members, and owns 6 Ocean Avenue, Ocean Grove, Neptune Township, New Jersey.

11.     The Defendant Plexicraft, Inc., is a Sub S Corporation in which Kretschman is the 100% shareholder and has a principal place of business at 200 Lexington Avenue, New York City, New York.

### CAUSE OF ACTION
### FIRST COUNT

1. PH Construction, LLC (hereinafter "PH and/or the Debtor") filed a petition for relief under Chapter 7 of the United States Bankruptcy Code on June 23, 2016.

2. Prior to the filing of the petition, PH was involved in the business of constructing and/or renovating homes.

3. PH's principal place of business was 302 Morris Avenue, Spring Lake, New Jersey.

4. In 2014, the Debtor's business was primarily performing construction work for a related entity, P.H. Distinctive Properties, LLC.

5. In 2014, PH's gross income was $4,533,873.00, and it had negative income, exclusive of depreciation, totaling approximately $280,000.00.

6. Commencing in 2015, PH commenced construction services for non-related third parties.

7. In 2015, PH had gross income of $2,021,712.00, and had net income exclusive of depreciation of approximately $22,000.00.

8. According to Kretschman, PH had a profit margin of 7-1/2%. In 2015 the net income represented only approximately 1% of gross income.

9. During the year preceding the filing of the petition in bankruptcy, the Debtor entered into contracts for renovation work and/or construction of homes including, but not limited to, work on a home owned by Glenn and Jean Paulsen (hereinafter "Paulsen") located at 14 Ocean Pathway, Ocean Grove, Neptune Township, New Jersey.

10. The contract with Paulsen was entered into on September 18, 2015 for the sum of $874,035.22.

11. At the time of the signing of the contract, Paulsen delivered to PH an initial deposit of $220,000.00 representing 25% of the total cost of the job.

12. Based upon a 1% profit margin, PH could expect to have profits of approximately $8,740.00.

13. Kretschman testified that overhead for PH Construction was 7.5%.

14. Based upon the Paulsen contract, PH could expect to receive about $65,000.00 for overhead.

15. In 2015, the salaries of the office personnel and contract supervisor exceeded $150,000.00.

16. At the time of the signing of the contract with Paulsen, the Debtor did not have sufficient monies to pay for all of the construction and/or renovation materials, subcontractors of the Paulsen job, and was totally dependent upon cash flow and collection of receivables and new contracts in order to pay salaries and subcontractors, and the businesses supplying services and/or product to the Debtor.

17. During the two years preceding the filing of the petition in bankruptcy, Kretschman, as a 99% member, received for his use and the use of his wife and 1 % member, P.Massaro, the following from the Debtor as distributions:

| | | |
|---|---|---|
| a) | May 15, 2015 | $2,308.00 |
| b) | May 29, 2015 | $2,308.00 |
| c) | June 12, 2015 | $2,308.00 |
| d) | June 26, 2015 | $2,308.00 |
| e) | July 10, 2015 | $2,308.00 |
| f) | July 24, 2015 | $2,308.00 |
| g) | August, 7, 2015 | $2,308.00 |
| h) | August 21, 2015 | $2,308.00 |
| i) | September 4, 2015 | $2,308.00 |
| j) | September 18, 2015 | $2,308.00 |
| k) | October 2, 2015 | $2,692.00 |

| l) | October 16, 2015 | $2,692.00 |
| m) | October 28, 2015 | $2,692.00 |
| n) | October 30, 2015 | $2,692.00 |
| o) | November 13, 2015 | $2,692.00 |
| p) | November 27, 2015 | $2,692.00 |
| q) | December 9, 2015 | $2,692.00 |
| r) | December 11, 2015 | $2,692.00 |
| s) | December 24, 2015 | $2,692.00 |
| t) | January 8, 2016 | $2,692.00 |
| u) | January 20, 2016 | $2,692.00 |
| v) | February 5, 2016 | $2,692.00 |
| w) | February 19, 2016 | $2,692.00 |
| x) | March 4, 2016 | $2,692.00 |
| y) | March 18, 2016 | $2,692.00 |
| z) | April 1, 2016 | $2,692.00 |
| aa) | April 15, 2016 | $2,692.00 |
| | **Total** | **$68,844.00** |

18. In addition to the $68,844.00 of distributions, Kretschman received the following

    distributions during the year preceding the filing of the petition:

| a) | August 31, 2015 | $   8,000.00 |
| b) | October 28, 2015 | $285,256.05 |
| c) | December 11, 2015 | $ 35,000.00 |
| | **Total** | **$328,256.05** |

19. At the time of the distributions to Kretschman for himself and for the benefit of his wife

    and co-member, P.Massaro, Kretschman and P.Massaro were not creditors of the

    Debtor, and were not owed any monies by the Debtor.

20. On or about October 28, 2015, PH Distinctive paid to PH $285,000.00 on account of a

    $474,246.00 debt owed by PH Distinctive to PH for construction work performed by

    PH for PH Distinctive.

21. Upon receipt of the $285,256.05 from PH Distinctive, Kretschman caused to be wire

    transferred $285,256.05 to himself as a distribution.

22. On or about December 11, 2015, Kretschman caused PH to pay to him the sum of $35,000.00 as a year-end distribution.

23. In the two years preceding the filing of the petition, Kretschman, as the managing member, took distributions totaling at least $401,100.05, including $368,384.00 in the last five (5) months of 2015, a year when there was reported ordinary business income of $14,886.00 and $21,536.00 in 2016 when there was no net income.

24. Kretschman was not an employee of the Debtor, and as a member of the limited liability company was only entitled to distributions of profits during the two (2) years preceding the filing of the petition.

25. The Operating Agreement of PH, Section 3.04 prohibits the withdrawal of capital except as specifically provided in the Operating Agreement. There are no such provisions for withdrawals in the Operating Agreement.

26. According to the PH 2015 Federal Income Tax return, Kretschman's capital account was reduced from $485,759.00 to $169,462.00

27. At the time Kretschman authorized and received the distributions, he knew that PH had not, and would not, earn profits of $401,100.05 which would entitle him to receive distributions of profits.

28. At the time of the distributions to Kretschman, the Debtor received less than reasonably equivalent consideration in exchange for the transfers, and was rendered insolvent on the date of the transfers, or became insolvent as a result of the transfers.

29. At the time of the transfers to Kretschman, the Debtor was engaged in a business for which any property remaining with the Debtor was an unreasonably amount of capital for it to conduct its business.

30. The reconciliation of the PH Bank account as of October 29, 2015 including checks written, but not yet cleared, left an ending balance of $12,257.37.

31. As of November 29, 2015, the register balance of PH bank account was $16,717.29, and there were new transactions pending which when cleared would leave an ending balance of ($49,428.04).

32. During the months of October and November 2015, PH obtained no new construction contracts.

33. The reconciliation of the PH Bank account as of December 29, 2015 revealed a register balance of $10,054.23 and an ending balance of ($49,622.19).

34. PH obtained no new construction projects during December 2015.

35. During the month of December 2015, PH did not obtain any new construction contracts, and did not obtain any new contracts in 2016.

36. At the time of the $401,100.05 of distribution transfers to Kretschman for his use and the use of P.Massaro, Kretschman knew, or should have known, that the Debtor intended to incur additional debts in connection with the operation of its business, which would be beyond the Debtor's ability to make payment on account of the debts.

37. At the time the transfers were made to Kretschman, he and P.Massaro were insiders, and the transfers were not made in the ordinary course of business of the Debtor.

38. The transfers to Kretschman were fraudulent transfers pursuant to 11 *U.S.C.* 548, and should be set aside.

39. But for the distributions made to Kretschman for which PH received no consideration, all of the creditors listed in the Chapter 7 petition of PH would have been paid.

40. Kretschman and P.Massaro owe to the Debtor Estate the sum of $401,100.05 on

account of the fraudulent transfers which they received for their benefit.

41. To the extent any of the transfers were for the benefit of P.Massaro, they were

fraudulent transfers to an immediate transferee.

**WHEREFORE**, the Plaintiff demands Judgment against the Defendants, Hans

Kretschman and Paulette Massaro, jointly and severally, as follows:

a.      requiring the Defendants to account for all distributions or returns of capital in the

2 years preceding the filing of the petition.

b.      determining that the transfers to Kretschman and P.Massaro were fraudulent

transfers pursuant to 11 *U.S.C.* 548;

c.      for the sum of $401,105.05;

d.      attorney fees and costs of suit; and

e.      such other relief as the Court deems equitable and just.

## SECOND COUNT

42. Plaintiff repeats and incorporates by reference as if set forth herein at length, each and

every allegation contained in the First Count of the Complaint.

43. The transfers of property by the Debtor to Kretschman as distributions for the use of

him and co-member and wife, P.Massaro, were fraudulent transfers pursuant to the

provisions of the New Jersey Uniform Fraudulent Transfer Act, *N.J.S.A.* 25:2-20 et seq.

made applicable to this proceeding by 11 *U.S.C.* 544.

44. The Defendants, Kretschman and P.Massaro, were insiders as defined by *N.J.S.A.* 25:2-22, and were aware of the debts of PH and its inability to pay same.

45. At the time of the distribution transfers to Kretschman, the Debtor was insolvent in accordance with the provisions of *N.J.S.A.* 25:2-23.

46. The transfers of the monies to Kretschman for his personal use, and the use of his wife, P.Massaro, were fraudulent transfers to present and future creditors in accordance with *N.J.S.A.* 25:2-25(b), because the Debtor did not receive reasonably equivalent value in exchange for the transfers, and the Debtor intended to incur, or believed or reasonably should have believed, that it would incur debts beyond its ability to pay same as they became due.

47. The receipt of the monies from PH authorized by Kretschman to himself for his personal use, and the use of his wife and co-member, P.Massaro by Kretschman were fraudulent transfers pursuant to *N.J.S.A.* 25:2-27(a), as to existing creditors at the time because the Debtor did not receive reasonably equivalent value in exchange for the transfers, and the Debtor was insolvent at the time of the transfers, or became insolvent, as a result of the transfers.

48. The Defendants, Kretschman and P.Massaro, willfully and intentionally sought to defraud the creditors of the Debtor, and to distribute monies to Kretschman and/or P.Massaro, and for the use of Kretschman and P.Massaro rather than to other creditors of PH or to use the monies to complete the Paulsen home.

**WHEREFORE**, the Plaintiff demands Judgment against the Defendant, Hans Kretschman and Paulette Massaro jointly and severally, as follows:

a.    determining that the transfers were fraudulent transfers pursuant to *N.J.S.A.* 25:2-20 *et seq.*;

b.    compelling the Defendants, Kretschman and P.Massaro, to reconvey the property to the Trustee;

c.    entering judgment against the Defendants, Kretschman and P.Massaro, for the sum of $401,105.05 representing the amounts transferred to Kretschman and/or P.Massaro;

d.    punitive damages;

e.    attorney fees and costs; and

f.    such other relief as the Court deems equitable and just.

### **THIRD COUNT**

49. Plaintiff repeats and incorporates by reference as if set forth herein at length, each and every allegation contained in the First and Second Counts of the Complaint.

50. Kretschman at all times herein referred was an insider.

51. On the dates set forth in paragraphs 18 and 19, all within one (1) year of the filing of the petition, PH through its managing member, Kretschman, transferred $389,920.00 in actual distributions to Kretschman for the use of Kretschman and P.Massaro.

52. The 2014 tax return of PH lists a loan from partners or persons related to the partners totaling $25,708.00.

53. The 2015 tax return of PH lists a year-end balance of loans from partners or persons related to partners as $0.00.

54. In the one year preceding the filing of the petition in bankruptcy, PH maintained an account at American Express utilizing the name PH Properties.

55. PH Properties is a fictitious entity utilized by Kretschman in connection with his dealings at American Express.

56. Kretschman was the obligor for all items charged on the American Express card in the name of PH Properties.

57. During the year preceding the filing of the petition, Kretschman caused PH to pay the outstanding balance of the American Express card for which he was personally responsible, rather than paying other creditors of PH.

58. During the period March 2016 through June 23, 2016, the date of the filing of the PH Chapter 7 bankruptcy petition, Kretschman caused American Express to be paid $64,014.216 which payments were obligations of Kretschman to American Express through his fictitious company, PH Properties.

59. The payment of the $64,014.26 in the three months preceding the filing of the petition, constituted repayments to Kretschman on account of loans or equity advances made by him to PH.

60. Kretschman directed that a payment be made to American Express by June 16, 2016 in the sum of $13,710.99 because he knew PH was filing a petition in bankruptcy and was insolvent.

61. In addition to the $64,014.26 paid to American Express during the period March 25, 2016 through June 23, 2016, the date of the filing of the petition, Kretschman also caused to be paid monies to American Express during the months July 2015 through March 24, 2016 totaling $79,369.12.

62. The total amount that Kretschman caused to be paid to American Express and/or PH Properties, Kretschman's fictitious entity, was $143,383.38.

63. The payments by PH to PH Properties were the payment of Kretschman's personal obligation to American Express, were not obligations of PH, but rather were in fact loans of capital contributions of Kretschman, the payment of which constituted preferential payments to an insider within the year preceding the filing of a petition in bankruptcy.

64. Kretschman caused the payments to be made to American Express rather than creditors of PH because Kretschman was personally responsible for the American Express bills.

65. February 24, 2016 when PH had insufficient capital to operate, Kretschman deposited $18,000.00 into the account of PH.  On or about February 26, 2016 at a time when PH had insufficient capital to operate, Kretschman deposited $8,600.00 into the account of PH which he referenced as a loan.

66. The $26,600.00 deposits by Kretschman to PH as the 99% member of PH should have been treated as a capital contribution.

67. On March 1, 2016, Kretschman caused PH to pay to Kretschman the sum of $26,600.00 in two payments of $18,000.00 and $8,600.00.

68. The payment of $26,600.00 to Kretschman on March 1, 2016 to the extent they represented loans were repayments of loans to an insider and should be set aside pursuant to 11 *U.S.C.* 547.

69. To the extent Kretschman contends that any of the transfers to him or P.Massaro were on account of debts due and owing to him, said transfers were made for or on account of an antecedent debt owed by the Debtor before such transfer was made.

70. As a result of the transfers of the monies, the Debtor was made insolvent.

71. The transfers of the property was made to or for the benefit of Kretschman who was an insider of the Debtor.

72. The transfer enabled Kretschman and/or Massaro to receive more than they would have received if the case were a case under Chapter 7 of the United States Bankruptcy Code at the time of the transfers, the transfers had not been made and the creditor received payment of the debt to the extent provided by the provisions of the United States Bankruptcy Code.

73. The transfers to Kretschman and P.Massaro constitute preferences and should be set aside pursuant to 11 *U.S.C.* 547.

74. The Plaintiff is entitled to judgment against the Defendants as the initial transferees pursuant to 11 *U.S.C.* 550.


**WHEREFORE**, the Plaintiff demands Judgment against the Defendants, Hans Kretschman and P.Massaro, jointly and severally, as follows:

a.      determining that the transfer of monies to Hans Kretschman directly or indirectly for his benefit constituted preferences and are set aside;

b.      entering judgment against the Defendant, Kretschman, for the sum of $195,691.38 representing the preferential payments;

c.      attorney fees and costs; and

d.      such other relieve as the Court deems equitable and just.

## **FOURTH COUNT**

75. Plaintiff repeats and incorporates by reference as if set forth herein at length, each and every allegation contained in the First, Second and Third Counts of the Complaint.

76. During the month of January, February, March, April, May, and June 2016, PH did not obtain any new construction projects, which would have been necessary to enable it to pay for materials and services provided by creditors.

77. The Operating Agreement of PH provides in Section 3.04 provides that the member may not withdraw capital or receive any distributions, except as specifically provided Therein.

78. Distributions to members are limited in Article IV, Section 4.01, of the Operating Agreement to distributable cash of the company.

79. *N.J.S.A.* 42:2C-35a provides that a company may not make distribution if the company would not be able to pay its debts as they became due.

80. *N.J.S.A.* 42:2C-35a(2) provides that a distribution may not be made to members when a company's total assets would be less than the sum of its total liabilities, plus the amount that would be needed if the company were dissolved, wound up and terminated at the time of the distribution.

81. Kretschman and P.Massaro violated the provisions of *N.J.S.A.* 42:2C-35 by making distributions to himself and/or P.Massaro. *N.J.S.A.* 42:2C-36a provides that a member or manager is personally liable to the company for the amount of the distribution that exceeds the amount that could have been distributed without violating § 35 of the Act.

82. *N.J.S.A.* 42:2C-36c provides that any person receiving a distribution knowing that the distribution is in violation of § 35 of the Act is personally liable to the limited liability

company to the extent that the distribution received by the person exceeded the amount that could have been properly paid under § 35 of the Limited Liability Statute.

83. At the time Kretschman and P.Massaro distributed monies to Kretschman or caused monies to be distributed to him during the years 2015 and 2016, the distributions were in violation of the New Jersey Revised Uniform Limited Liability Company Act, and in violation of the Operation Agreement.

84. During approximately the last seven (7) months of year 2015, Kretschman withdrew or distributed to himself $378,564.05.

85. During the year 2016, Kretschman distributed to himself, or caused to be distributed to himself, $21,536.00.

86. The distributions to Kretschman were for the benefit of himself and his co-member and wife, P. Massaro, and were made for their exclusive gain at the expense of PH's subcontractors, suppliers and the Paulsens.

87. Kretschman and P.Massaro breached their fiduciary duties as a result of the wrongful distributions.

**WHEREFORE**, the Plaintiff demands Judgment against the Defendant, Hans Kretschman and Paulette Massaro, as follows:

a.    determining that Kretschman and P.Massaro breached their fiduciary duties to PH;

b.    determining that Kretschman and P.Massaro breached their fiduciary duties to the subcontractors, suppliers and the Paulsens by distributing monies to themselves;

c.    entering judgment for the sum of $401,100.05;

d.    punitive damages;

e.      attorney fees and costs; and

f.      such other relieve as the Court deems equitable and just.

## **FIFTH COUNT**

88. Plaintiff repeats and incorporates by reference as if set forth herein at length, each and every allegation contained in the First, Second, Third and Fourth Counts of the Complaint.

89. As a result of construction performed by PH for the benefit of PH Distinctive, PH Distinctive owed to PH as of December 31, 2014 the sum of $474,246.00.

90. PH Distinctive is owned 50% by Kretschman and 50% by P.Massaro.

91. PH Distinctive is a related entity to PH.

92. In 2014, PH Distinctive owned real properties including homes built by PH which formed a basis of the indebtedness to PH.

93. On information and belief, during the years 2014 and 2015, PH Distinctive sold the properties owned by it.

94. On information and belief, the amount received by PH Distinctive from sales of its properties was sufficient to pay the entire indebtedness owed to PH.

95. Rather than paying the entire indebtedness owed to PH by PH Distinctive, Kretschman and P.Massaro caused to be paid only $285,256.05 on or about October 28, 2015.

96. On the same date that the $285,256.05 was received from PH Distinctive, Kretschman caused the sum of $285,256.05 to be distributed to himself for his personal benefit and the benefit of his wife and co-member, P.Massaro.

97. Rather than paying its entire indebtedness to PH, PH Distinctive at the direction of Kretschman and/or P.Massaro withheld monies, and continued to maintain and control a portion of the sale proceeds in the accounts of PH Distinctive.

98. On information and belief, PH Distinctive disbursed monies to Kretschman and/or P.Massaro rather than paying its debt owed to PH.

99. PH Distinctive remains indebted to PH for the sum of $188,989.95.

100.    Kretschman and/or P.Massaro breached their fiduciary duties to the creditors of PH by limiting the amount that PH Distinctive paid to PH, and instead distributing the monies to themselves or retaining it for PH Distinctive.

101.    The distribution of monies to Kretschman and/or P.Massaro by PH Distinctive was in violation of the New Jersey Limited Liability Act, and a breach of their fiduciary duties to PH.

**WHEREFORE**, the Plaintiff demands Judgment against the Defendant, Hans Kretschman, Paulette Massaro and PH Distinctive Properties, LLC, jointly and severally, as follows:

a.      for the sum of $188,989.95;

b.      determining that Kretschman and P.Massaro breached their fiduciary duties to PH;

c.      punitive damages;

d.      attorney fees and costs; and

e.      such other relieve as the Court deems equitable and just.

## SIXTH COUNT

102.    Plaintiff repeats and incorporates by reference as if set forth herein at length, each

and every allegation contained in the First, Second, Third, Fourth, and Fifth Counts of

the Complaint.

103.    Following receipt of the $401,105.05 distributions, including the $285,256.05

distribution from PH, and repayment of capital and preferential payments to insiders,

Kretschman purchased a 17% interest in Plexicraft, Inc. for the sum of $150,000.00.

104.    Shortly after purchasing the 17% interest in Plexicraft, Inc., a Sub S Corporation

(hereinafter "Plexicraft") for the sum of $150,000.00, Kretschman paid off all of the

debts of Plexicraft totaling approximately $250,000.00, and became the sole owner of

Plexicraft.

105.    Plexicraft's principal place of business is 200 Lexington Avenue, New York City,

New York, and it has a factory in the Bronx, New York.  Kretschman is the 100%

owner of Plexicraft, its President and sole member of the Board of Directors of

Plexicraft.

106.    The distributions received by Kretschman from PH were used in part to purchase

his interest in Plexicraft, and to pay all debts of Plexicraft.

107.    The transfers of monies by Kretschman to pay debts of Plexicraft were fraudulent

transfers to or for the benefit of Plexicraft in accordance with the provisions of 11

*U.S.C.* 548 and 11 *U.S.C.* 550.

108.    Kretschman's interest in Plexicraft should be deemed to be held in constructive

trust for the benefit of the Debtor Estate of PH.

109.    PH is entitled to recover from Kretschman and Plexicraft the sum of $381,000.00 representing monies transferred to or for the benefit of Kretschman and Plexicraft in violation of 11 *U.S.C.* 548 and the New Jersey Fraudulent Transfer Act.

**WHEREFORE**, the Plaintiff demands Judgment against the Defendant, Hans Kretschman, and Plexicraft, Inc. as follows:

a.   for the sum of $381,000.00;

b.   determining that all of the assets of Plexicraft are held in constructive trust for the benefit of the Debtor Estate of PH construction, L.L.C.;

c.   imposing a constructive trust on the shares of stock owned by Kretschman in Plexicraft;

d.   attorney fees and costs; and

e.   such other relieve as the Court deems equitable and just.

## SEVENTH COUNT

110.    Plaintiff repeats and incorporates by reference as if set forth herein at length, each and every allegation contained in the First, Second, Third, Fourth, Fifth and Sixth Counts of the Complaint.

111.    The Defendant PHJ, L.L.C. (hereinafter "PHJ") is a limited liability company located at 8 Ocean Avenue, Ocean Grove, Neptune Township, New Jersey.

112.    PHJ is a limited liability company in which the Defendants, Kretschman and P.Massaro, husband and wife, each are 50% members.

113.    On information and belief, monies distributed to Kretschman have been utilized, and/or contributed to PHJ which operates the Laingdon Hotel.

114.    Based upon the monies distributed to Kretschman in violation of the New Jersey Limited Liability Company Act, the New Jersey Fraudulent Transfers Act, and the provisions of 11 *U.S.C.* 548, a constructive trust should be imposed on the interests of Kretschman and P.Massaro in PHJ.

115.    Based upon the monies distributed to Kretschman in violation of the New Jersey Limited Liability Company Act, the New Jersey Fraudulent Transfers Act, and the provisions of 11 *U.S.C.* 548, the transfers to PHJ are fraudulent transfers to an immediate transferee and the Trustee is entitled to recover same.

**WHEREFORE**, the Plaintiff demands Judgment against the Defendant, Hans Kretschman, and P.Massaro and PHJ Inc. as follows:

a.  compelling PHJ, L.L.C. to account for any and all monies received from Kretschman and/or P.Massaro during the years 2014, 2015 and 2016 derived from distributions from PH;

b.  entering judgment against PHJ for any and all monies distributed to it or for bills paid for it by Kretschman and/or P.Masaro from monies derived from distributions from PH;

c.  imposing a construction trust on the membership interests of Kretschman and P.Massaro in PHJ;

d.  attorney fees and costs; and

e.  such other relieve as the Court deems equitable and just.

## **EIGHTH COUNT**

116.    Plaintiff repeats and incorporates by reference as if set forth herein at length, each and every allegation contained in the First, Second, Third, Fourth, Fifth Sixth and Seventh Counts of the Complaint.

117.    The Defendant, PHJAC is a limited liability company located at 6 Ocean Avenue, Ocean Grove, Neptune Township, New Jersey.

118.    The property located at 6 Ocean Avenue, Ocean Grove, Neptune Township, New Jersey, is a summer vacation home utilized by the Defendants, Kretschman and P.Massaro.

119.    PHJAC is a limited liability company in which the Defendants, Kretschman and P.Massaro, husband and wife, each own 50%.

120.    On information and belief, monies distributed to Kretschman and/or repaid to Kretschman as preferences have been utilized to maintain marital assets, including the home located at 6 Ocean Avenue, Ocean Grove, Neptune Township, New Jersey, owned by PHJ.

121.    Based upon the monies distributed to Kretschman in violation of the New Jersey Limited Liability Company Act, the New Jersey Fraudulent Transfer Act, and the provisions of 11 *U.S.C.* 547 and §548, a constructive trust should be imposed on the interests of Kretschman and P.Massaro in PHJAC.

122.    The monies distributed to Kretschman in violation of the New Jersey Limited Liability Company Act, New Jersey Fraudulent Transfer Act, and the provisions of 11 *U.S.C.* 547 and §548 which were subsequently transferred to PHJAC are entitled to be recovered as fraudulent transfers to a subsequent transferee.

**WHEREFORE**, the Plaintiff demands Judgment against the Defendant, Hans Kretschman, and P.Massaro and PHJAC  as follows:

a.       compelling PHJAC, L.L.C. to account for any and all monies received from Kretschman and/or P.Massaro during the years 2014, 2015 and 2016 derived from distributions from PH;

b.       entering judgment against PHJAC for any and all monies distributed to it or for bills paid for it by Kretschman and/or P.Masaro from monies derived from distributions from PH;

c.       imposing a construction trust on the membership interests of Kretschman and P.Massaro in PHJAC;

d.       attorney fees and costs; and

e.       such other relieve as the Court deems equitable and just.


                                    ATKINSON & DEBARTOLO
                                    Attorneys for Plaintiff/Trustee


Dated: 04/28/2017                   BY:     _/s/ Bunce D. Atkinson_____
                                            BUNCE D. ATKINSON